# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARY R. REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:18-CV-00099-XR |
| | ) | |
| MEDICREDIT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT MEDICREDIT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF STANDING

COMES NOW Defendant Medicredit, Inc. ("Medicredit"), under F.R.C.P. 12(b)(1) & 56, moves for summary judgment or, in the alternative, for dismissal for lack of standing:

### I.    Preliminary Statement

The dispositive issue in this case is a purely legal question—do the two Notices Medicredit sent Plaintiff violate the FDCPA when they listed the same number for Plaintiff's account with Medicredit, but also listed the two different account numbers for Plaintiff's accounts with the original creditor.  Because even the most cursory reading of the two Notices reveals that they concerned separate obligations and the nature, amount, and identity of those obligations, the answer to that question must be "no."  This Court, therefore, should enter summary judgment on Plaintiff's claims against Medicredit.

Even if this Court finds that Medicredit could be liable under the FDCPA, it should still enter summary judgment in its favor on the issue of damages.  Plaintiff testified in her deposition that she has not incurred any actual damages as a result of Medicredit's alleged conduct and has not identified any actual damages throughout discovery in this case.  This Court, therefore, should enter summary judgment in Medicredit's favor holding that Plaintiff cannot recover any

actual damages in this case.  Because Plaintiff, as a matter of law, lacks actual damages, she also lacks Article III standing.  This Court, therefore, should grant Medicredit's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss for Lack of Standing.

      **II.**     **Statement of Undisputed Material Facts**

1.     Plaintiff incurred two debts with Methodist Specialty and Transplant Hospital ("Methodist").  *See* Transcript of Deposition of Mary Reynolds, attached as **Exhibit A**, at p. 19:20–25.

2.     The first debt was incurred in the amount of $600.00 for services rendered by Methodist on March 26, 2017. *See* **Exhibit A** at p. 20:5–11.

3.     The second debt was incurred in the amount of $75.00 for services rendered by Methodist on August 6, 2017.  *See* **Exhibit A** at p. 20:12–23.

4.     Plaintiff received at least one bill from Methodist for the March 26, 2017, date of service.  *See* **Exhibit A** at p. 20:19–23; *see also* Bill for services with a statement date of May 3, 2017 (the "Methodist Bill"), attached as **Exhibit B**.

5.     The amount stated on the Methodist Bill as owing is $600.00, and lists the dates of services as March 26, 2017, through April 1, 2017.  *See* **Exhibit B**.

6.     The account number listed on the Methodist Bill is XXXXX4070.  *See* **Exhibit B**. The Methodist Bill lists that account number in two places—near the top right and on the left just below "Account Activity."  *See* **Exhibit B**; *and* **Exhibit A** at pp. 27:17–28:9.

7.     After Plaintiff did not pay the Methodist Bill, Methodist placed her account with Medicredit on September 5, 2017.  *See* Declaration of Don Wright, attached as **Exhibit C**, at ¶ 3.

SL 3081369.1

8. Medicredit then sent Plaintiff a written notice dated September 12, 2017 (the "September Notice").  *See* **Exhibit C** at ¶ 4; *and* Notice dated September 12, 2017, attached as **Exhibit D**.

9. In the top left corner and bottom right corner of the first page of the September Notice, it states, "Account #:  XXXX2938."  *See* **Exhibit D** at p. 1.

10. In the middle of the first page of the September Notice, the following table appears with an "Important Notice" just above it:

**Important Notice:**
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

| Client Account # | Facility | Patient Name | Date of Service | Balance |
|---|---|---|---|---|
| ████4070 | Methodist Specialty & Tran | Mary Reynolds | 03/26/2017 | 600.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Call us toll free at 800-823-2318.

**This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for this purpose.**

*See* **Exhibit D** at p. 1.

11. The "Client Account #" in that table is XXXXX4070, the same account number listed in the Methodist Bill.  *Compare* **Exhibit D** at p. 1 *with* **Exhibit B**; *see also* **Exhibit A** at pp. 26:8–29:9.

12. On January 20, 2018, Methodist separately placed Plaintiff's account related to her August 5, 2017, visit with Medicredit.  *See* **Exhibit C** at ¶ 5.

13. On January 26, 2018, Medicredit sent a written notice to Plaintiff related to the account for the August visit (the "January Notice").  *See* **Exhibit C** at ¶ 6; *and* Notice dated January 26, 2018, attached as **Exhibit E**.

3

14.     On the top left and bottom right of the first page of the January Notice the "Account #" is listed as XXXX2938.  *See* **Exhibit E** at p. 1.

15.     Similar to the September Notice, the January Notice also contains the following table with an "Important Notice" listed just above it:

**Important Notice:**
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

| Client Account # | Facility | Patient Name | Date of Service | Balance |
|---|---|---|---|---|
| ▆▆▆3445 | Methodist Specialty & Tran | Mary Reynolds | 08/06/2017 | 75.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Call us toll free at 800-823-2318.

**This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for this purpose.**

*See* **Exhibit E** at p. 1.

16.     Both the September Notice and the January Notice contain the following language, just below the header:

The account(s) listed below have been placed with this agency with the full intention of collecting on this account(s).  Please give the past due account(s) the attention it deserves.

*See* **Exhibit D** at p. 1 *and* **Exhibit E** at p. 1.

17.     The "Client Account #" listed in the January Notice is different than that of the September Notice.  C*ompare* **Exhibit D** at p. 1 *with* **Exhibit E** at p. 1.

18.     The "Client Account #" on the January Notice corresponds to the account number Methodist assigned to Plaintiff's account for her August 6, 2017 visit.  *See* **Exhibit C** at ¶ 7.

19.     The "Account #" listed on both the September Notice and the January Notice corresponds to the account number Medicredit assigned to Plaintiff.  *See* **Exhibit C** at ¶ 8.

4

20.     In her deposition, Plaintiff testified that the only actual damages she believes she has in this case are emotional distress damages.  *See* **Exhibit A** at pp. 44:8–47:23.

21.     Plaintiff also admitted in her deposition that her alleged emotional distress was a result of owing money to a creditor when she could not pay and because she was receiving phone calls about the debt.  *See* **Exhibit A** at pp. 45:9–46:14.

22.     As to her alleged emotional distress, Plaintiff has disclosed only that she told her son that she was "really, really stressed."  *See* **Exhibit A** at p. 45:5–19.

23.     Plaintiff further testified that not even her husband has commented on any change in her emotional state after receiving the Notices.  *See* **Exhibit A** at p. 57:21–25.

24.     In her Rule 26(a)(1) disclosures, Plaintiff only disclosed herself, Defendant and its employees, a potential expert, and employees of Methodist as individuals with discoverable information in this case.  *See* Plaintiff's Rule 26(a)(1) Disclosures, attached as **Exhibit F**, at pp. 1–2.

25.     As for trial witnesses, Plaintiff disclosed only herself and Don Wright, Medicredit's Senior Vice President of Operations, in her Rule 26(a)(3) disclosures.  *See* Plaintiff's 26(a)(3) Disclosures, attached as **Exhibit G**, at p. 1.

## III.     Summary Judgment Standard

Courts must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Meadaa v. K.A.P. Enterprises, L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). A dispute is genuine <u>only</u> "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

SL 3081369.1

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party meets this burden, the non-moving party must present specific facts that establish the existence of a genuine issue of fact for trial. *See Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012).

**IV.    Argument**

Plaintiff's claims in this case fail for three reasons:  (1) the September Notice and the January Notice do not fall below the "least sophisticated consumer" or "unsophisticated consumer" standards; (2) even if they did, Plaintiff cannot recover actual damages; and (3) because she cannot recover actual damages, Plaintiff lacks Article III standing and thus this Court lacks subject matter jurisdiction.

**A. The Notices do not violate the FDCPA because the least sophisticated consumer would understand that they were for separate financial obligations.**

Plaintiff claims that the September Notice and January Notice (collectively the "Notices") violate the FDCPA in that they are misleading or deceptive.  These claims fail because the "least sophisticated consumer" or "unsophisticated consumer" would not be deceived or mislead by the Notices.  In this case, Plaintiff argues that because the Notices contained both Medicredit's account number and the account numbers Methodist assigned to Plaintiff's accounts the Notices violate sections 1692e, e(2),& e(10), as well as section 1692f of the FDCPA.  *See* Doc. 19 at pp. 3–5.  In other words, Plaintiff essentially asserts that she was

6

misled about her rights as to the debt referenced in the January Notice and that because she was misled, Medicredit engaged in an unfair collection practice.

But "to determine whether a collection letter contains false, deceptive, or misleading representations, a court views the letter from the perspective of an 'unsophisticated or least sophisticated consumer.'"[1]  *Nolan v. Account Control Tech., Inc.*, 2018 WL 1903147, at *2 (W.D.Tex. Feb. 23, 2018) (quoting *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016)).  This standard is an objective one.  *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

Although the Court should "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors," it should "not consider the debtor as tied to the 'very last rung on the intelligence or sophistication ladder.'"  *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004).  Or as one court has put it, a hypothetical consumer is "uninformed, naïve, and trusting, but...possesses reasonable intelligence, and is capable of making basic logical deductions and inferences."  *Sanford v. Portfolio Recovery Assocs., LLC*, 2013 WL 3798285, at *12 (E.D.Mich. July 22, 2013).  That consumer is not an "idiot" or "dimwit."  *Id.* (citing *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)).  The hypothetical consumer also "is 'not illiterate, and can be expected to read the entire collection letter with some care.'"  *Gomez v. Niemann & Heyer, LLP*, 2016 WL 3562148, at *3 (W.D.Tex. June 24, 2016) (quoting *Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 867 (S.D.Tex. 2001)).  Courts must analyze whether a debt collection letter is misleading as a whole.  *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009).  Further, the "least sophisticated consumer" standard

---

[1] The Fifth Circuit has yet to decide whether courts within its jurisdiction are to apple the "unsophisticated consumer" or the "least sophisticated consumer" standard, but in most cases, the outcome is the same regardless of which standard applies.  *See McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir 2012).

SL 3081369.1

does not only protect consumers; it also protects "'debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials.'" *Id*. at 603 (quoting *Taylor*, 103 F.3d at 1236).  While this issue is normally one of fact, where, as here, "'reasonable minds' cannot differ", whether a debt collection notice falls below the "least sophisticated consumer" or "unsophisticated consumer" standards and is deceptive, misleading, or unfair is an issue a court may appropriately decide on summary judgment.  *Gomez*, 2016 WL 3562148, at *4 (quoting *Gonzalez*, 577 F.3d at 606–07).

Here, as a matter of law, the Notices, when read as a whole, do not violate the "unsophisticated consumer" or "least sophisticated consumer" standards.  When read as a whole and "with some care", even the "least sophisticated consumer" would realize the Notices pertained to two different debts.  The September Notice, in the middle of the page in a table, states that the account number assigned by Methodist is XXXXX4070, that the date of service was March 26, 2017, and the balance due and owing was $600.

**Important Notice:**
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

| Client Account # | Facility | Patient Name | Date of Service | Balance |
|---|---|---|---|---|
| ▮▮▮▮4070 | Methodist Specialty & Tran | Mary Reynolds | 03/26/2017 | 600.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Call us toll free at 800-823-2318.

**This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for this purpose.**

*See* Statement of Undisputed Material Facts ("SUMF") at ¶ 10.

8

The January Notice, by contrast, provides that the account number assigned by Methodist is XXXXX3445, the date of service was August 6, 2017, and the balance due and owing was $75.00.

**Important Notice:**
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

| Client Account # | Facility | Patient Name | Date of Service | Balance |
|---|---|---|---|---|
| ███████3445 | Methodist Specialty & Tran | Mary Reynolds | 08/06/2017 | 75.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Call us toll free at 800-823-2318.

**This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for this purpose.**

*See* SUMF at ¶ 15.  Further, both Notices explicitly direct the reader's attention to the table and debt listed therein:

The account(s) listed below have been placed with this agency with the full intention of collecting on this account(s).  Please give the past due account(s) the attention it deserves.

*See* **Exhibit D** at p. 1 *and* **Exhibit E** at p. 1.  In other words, both Notices tell the reader that the debt list in the table is the debt for which the notice is being sent.

So when read as a whole, even the "least sophisticated consumer" or the "unsophisticated consumer" would realize the two Notices pertained to separate debts from two separate visits to Methodist and would not be deceived or misled by Medicredit's use of its own account number on both Notices.  Indeed, such a consumer would readily be able to determine that the two Notices pertained to separate debts.  The Notices specifically direct the reader to the debt listed in the table "below". Further, the "client account number" on each Notice corresponds to the

9

account number listed in the bills Plaintiff received or should have received from Methodist, the original creditor.   So no reasonable reading of the Notices would make the January Notice deceptive or misleading; rather, only a "bizarre or idiosyncratic" reading of the Notices would make the January Notice deceptive or misleading.   Reasonable minds, therefore, could not differ such that summary judgment is appropriate on this issue.

Thus, this Court should grant Medicredit's Motion for Summary Judgment.

**B.   Even if Plaintiff can establish liability under the FDCPA, she lacks actual damages.**

Plaintiff has admitted that she cannot prove causation-in-fact for her alleged emotional distress claims and that she lacks actual damages.   Therefore, even if Plaintiff can establish liability, this Court should enter summary judgment in Medicredit's favor and hold that Plaintiff cannot recover actual damages.   In addition, because Plaintiff lacks actual damages, she does not have standing to bring this claim this Court thus lacks subject matter jurisdiction.

**i.      Plaintiff cannot recover actual damages.**

In her Amended Complaint, Plaintiff seeks to recover actual damages.   Plaintiff, however, has testified that she does not, in fact, have any actual damages as a result of the alleged violation of the FDCPA in this case.   Under the FDCPA, to recover actual damages, a plaintiff must prove that the actual damages were "sustained...as a result of" the alleged violation of the FDCPA.  *See* 15 U.S.C. § 1692k(a)(1) ("...any debt collector who fails to comply with any provision of this subchapter...is liable...in an amount equal to the sum of...any actual damage sustained...**as a result of such failure**.") (emphasis added).   In her deposition, Plaintiff testified that the only actual damages she believes she has in this case are emotional distress damages. *See* SUMF at ¶ 19.   Plaintiff, however, has conceded that she cannot establish causation—an essential element of her claim for actual damages—because she has admitted that her alleged

10

emotional distress is not "as a result of" the Notices.   Even were Plaintiff able to establish cause-in-fact, Plaintiff lacks sufficient evidence of her alleged emotional distress.

First, Plaintiff admitted in her deposition that her alleged emotional distress was a result of owing money to a creditor when she could not pay and because she was receiving phone calls about the debt.  *See* SUMF at ¶ 20.  So the emotional distress Plaintiff alleges in this case was not caused by the alleged violation of the FDCPA—that is, her alleged emotional distress is admittedly not "as a result of" or caused by the allegedly deficient Notices.   Thus, because Plaintiff cannot establish that the Notices were the cause of her alleged emotional distress, and because she has not disclosed any other actual damages, this Court should hold that, if Plaintiff can establish liability, she is not entitled to actual damages.   In this situation, such a determination is appropriate given that Plaintiff has not disclosed any other alleged actual damages.  *See* F.R.C.P. 37(c)(1)(C) & 37(b)(2)(A)(ii).

Second, even if Plaintiff were allowed to proceed on her claim for emotional distress damages, the evidence she has disclosed in support thereof is insufficient as a matter of law.  In the Fifth Circuit, a plaintiff's "conclusory statements that [s]he suffered emotional harm are insufficient" to recover damages for emotional distress.  *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013) (siting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 719 (5th Cir. 1998)).  Instead, claims for emotional distress damages "must be supported by specific evidence of the nature and extent of the harm."  *Id.* (citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996)).  That is, a plaintiff's self-serving testimony on its own is insufficient to grant an award of damages for emotional distress; the plaintiff's self-serving testimony must be coupled with other corroborating evidence, such as that from a mental health professional or a spouse, family member, friend, or coworker about "objective evidence of emotional distress,

such as crying spells, outbursts of anger, sleeplessness, or excessive sleeping." *See id. and Brady*, 145 F.3d at 719.  Indeed, the U.S. Supreme Court has specifically held that "conclusory statements that the plaintiff suffered emotional distress...[do not] support[] an award of compensatory damages." *See Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (citing *Carey v. Piphus*, 435 U.S. 247, 264 1978)).

Here, Plaintiff has submitted only her conclusory, self-serving testimony as evidence of her alleged emotional distress.  She has disclosed only that she told her son that she was "really, really stressed." *See* SUMF at ¶ 21.  She also has not disclosed any witnesses who can offer "objective evidence of emotional distress"; in fact, Plaintiff affirmatively testified that not even her husband has commented on any change in her emotional state after receiving the Notices. *See* SUMF at ¶ 22.  And Plaintiff disclosed no other witnesses concerning her emotional distress damages.  In her Rule 26(a)(1) disclosures, Plaintiff only disclosed herself, Defendant and its employees, a potential expert, and employees of Methodist as individuals with discoverable information in this case.  *See* SUMF at ¶ 23.  Further, Plaintiff disclosed only herself and Don Wright, Medicredit's Senior Vice President of Operations, as trial witnesses in her Rule 26(a)(3) disclosures.  *See* SUMF at ¶ 24.  So, under Fifth Circuit and U.S. Supreme Court precedent, Plaintiff cannot establish sufficient evidence for a jury to award her emotional distress damages. This Court, therefore, should grant Medicredit's Motion and hold that Plaintiff, as a matter of law, cannot recover actual damages even if she could establish liability.

     ii.     **Because Plaintiff cannot recover actual damages, she lacks standing to bring this claim and this Court should dismiss her Amended Complaint because it lacks subject matter jurisdiction.**

As set out above, Plaintiff cannot, as a matter of law, recover actual damages.  And because she cannot recover actual damages, Plaintiff lacks Article III standing to bring this case.

SL 3081369.1

Article III standing goes to a court's subject matter jurisdiction.[2]  *See Crane v. Johnson*, 783 F.3d 244, 250–51 (5th Cir. 2015).   In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court possesses the "power to dismiss...on any one of three separate bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. at 251.

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, ----- U.S. -----, 136 S. Ct. 1540, 1547 (2016).  In this case, Plaintiff cannot establish the first element of Article III standing—that she suffered an injury in fact.

The Supreme Court recently held in *Spokeo* that, to establish the first element of Article III standing, a "'concrete' injury must be 'defacto'; that is, it must actually exist."  *Id*. (quoting *Spokeo*, 136 S. Ct. at 1548).  While a violation of a procedural, statutory right may be sufficient "in some circumstances to constitute injury in fact", the alleged statutory violation must create the "risk of real harm."  *Id*.

Here, unlike the failure to report a debt as disputed to credit reporting agencies at issue in *Sayles*, the alleged misleading or deceiving nature of the Notices does not present a "risk of real harm."  As the Fifth Circuit noted in *Sayles*, incorrect credit reporting can have real, financial

---

[2] Issues related to a court's subject matter jurisdiction may be raised at any time and are not subject to waiver.  *See* F.R.C.P. 12(h)(1) (stating that only the defenses "listed in Rule 12(b)(2)–(5)" are waived if not timely raised); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("...subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived...Moreover, courts...have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

SL 3081369.1

consequences in that an erroneously reported debt directly affects a person's credit report.  *Id*. By contrast, in this case, Plaintiff's supposed confusion about her rights as to the January Notice does not present a "risk of real harm."  At worst, Plaintiff would have mistakenly lost her right to request validation of the debt noted in the January Notice.  But, Plaintiff has not alleged that she could have or would have disputed that debt.  Indeed, she has all but admitted that the debt is valid because she concedes that she was treated at Methodist in August of 2017.  *See* SUMF at ¶¶ 1–3. And even if she could have or would have disputed that debt, it would not have resulted in any financial harm to her; at most, she would have lost her right to seek validation of the debt. But as the Fifth Circuit held in *Sayles*, even if she lost this right, if she disputed the debt after the 30-day period for requesting validation, she could still have disputed the debt such that she could have prevent negative credit reporting.  *Id*.  Plaintiff thus faced no "real risk of harm".  So Plaintiff lacks an injury in fact and therefore cannot establish Article III standing.

This Court, therefore, should, in the alternative, dismiss Plaintiff's Amended Complaint for lack of standing.

### V.    Conclusion

Plaintiff's claims under the FDCPA fail as a matter of law.  First, the Notices do not mislead or deceive even the "least sophisticated consumer" or "unsophisticated consumer." Reading the Notices "with some care" and as a whole, it is apparent that they concerned two separate debts.  But even if Plaintiff could establish liability under the FDCPA, she lacks actual damages.  The only actual damages Plaintiff is claiming are damages for emotional distress. However, Plaintiff has testified that her alleged emotional distress is not related to the Notices. And even if it were, Plaintiff has disclosed no witnesses to corroborate her self-serving, conclusory statements that she has suffered emotional distress.  Thus, as a matter of law, Plaintiff

14

cannot recover damages for emotional distress and lacks any actual damages.  Further, because Plaintiff cannot recover actual damages, she does not have Article III standing to bring this case and this Court thus lacks subject matter jurisdiction.  For all of these reasons, this Court should grant Medicredit's Motion for Summary Judgment or, in the Alternative Motion to Dismiss for Lack of Standing.

WHEREFORE Defendant Medicredit, Inc., requests this Court grant its Motion for Summary Judgment or, in the Alternative Motion to Dismiss for Lack of Standing, enter an Order entering judgment in its favor on Plaintiff's Amended Complaint or alternatively dismissing Plaintiff's Amended Complaint for lack of standing, and for any additional relief this Court deems appropriate under the circumstances.

Respectfully submit this 14th day of December, 2018.

Respectfully submitted,

By: *s/ Jacob F. Hollars*
Jacob F. Hollars (admitted *pro hac vice*)
   Colorado Bar No. 50352
jhollars@spencerfane.com
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Tel: 303.839.3707
Fax: 303.839.3838

Mark A. McNitzky
   Texas Bar No. 24065730
Mark.mcnitzky@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
112 E. Pecan St., Suite 2700
San Antonio, Texas 78205
Tel: 210-354-1300
Fax: 210-277-2702

**ATTORNEYS FOR DEFENDANT**

15

SL 3081369.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above pleading was filed and served via the Court's CM/ECF system and served by email on all counsel of record, this 14th day of December, 2018.

*s/ Jacob F. Hollars*
Jacob F. Hollars

SL 3081369.1