UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARY R. REYNOLDS, | |
| Plaintiff, | Case No.: 5:18-cv-00099-XR |
| v. | |
| MEDICREDIT, INC., | Honorable Judge Xavier Rodriguez |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT
MEDICREDIT, INC.'S MOTION FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF STANDING**

NOW comes MARY R. REYNOLDS ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., responding to MEDICREDIT, INC.'s ("Defendant") Motion for Summary Judgment or, in the alternative, Motion to Dismiss for Lack of Standing ("Defendant's Motion") and in support thereof states as follows:

**I.     INTRODUCTION**

Defendant asserts that it is entitled to summary judgment in its favor on Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"). Before addressing Defendant's arguments, it is important to point out the impropriety of its statement "[t]he dispositive issue in this case is a purely legal question." The dispositive issue in this matter is whether Defendant sent Plaintiff a series of collection letters which are deceptive or misleading under the FDCPA. "In the Fifth Circuit, whether a debt collection letter, or a portion thereof, would mislead or deceive an unsophisticated or a least sophisticated consumer **is a question of fact.**" *Langley v. Weinstein & Riley, P.S.,* 2013 U.S. Dist. LEXIS 83794, at *7 (S.D. Tex. Jun. 14, 2013) (emphasis added) (citing

1

*Gonzalez v. Kay,* 577 F.3d 600, 603, 605-06 (5th Cir. 2009). As such, the instant matter is not *solely* a legal question.

Turning to Defendant's argument in support of its Motion, Defendant's entire argument is premised on the notion that a reading of the collection letters serving as the basis of Plaintiff's First Amended Complaint are not actionable under the FDCPA. However, Defendant's argument is based entirely on its own mischaracterization of the collection letters it sent, as well as conclusory statements that its collection letters are not deceptive. Instead, as discussed below, the nature of the collection letters sent by Defendant to Plaintiff are such that a reasonable jury could conclude that the letters are deceptive and misleading under the FDCPA. As such, genuine issues of material fact remain as to whether Defendant's collection letters violate the FDCPA such that judgment as a matter of law should not be entered in its favor. As such, Defendant's Motion must be denied to the extent it seeks summary judgment in its favor on Plaintiff's claims under the FDCPA.

Defendant goes on to proffer an equally unconvincing argument that, even if the Court finds that it could be liable under the FDCPA, Claimant lacks standing to pursue her claims under the FDCPA because she has purportedly not sustained any actual damages as a result of Defendant's collection letters. However, Defendant's argument improperly collapses an actual damages analysis into a standing analysis. As illustrated below, the nature of this matter and of Defendant's alleged violations of the FDCPA are sufficient to establish Plaintiff's standing to bring her claims under the FDCPA. Therefore, the Court should deny Defendant's Motion to the extent it seeks dismissal of Plaintiff's claims for lack of standing.

**II.      STATEMENT OF FACTS IN DISPUTE**

Defendant's Motion does well to outline many of the undisputed facts applicable to the instant matter. However, Plaintiff submits the below facts which were omitted or otherwise overlooked by Defendant in its statement of undisputed material facts.

1. Although Plaintiff received a bill from the original creditor – Methodist Specialty and Transplant Hospital ("Methodist") – in relation to the March 26, 2017 services she received from Methodist, Plaintiff did not receive a bill from Methodist regarding the services she received on August 6, 2017. *See* Defendant's Motion at Exhibit A, p. 32: 2-5.

2. Plaintiff further testified about the confusing nature of Defendant's collection letters during her deposition. *See Id.* at p. 31-41.

3. Plaintiff's confusion stemmed from the fact that both of the collection letters sent to Plaintiff were associated with a single Medicredit account number ending in 2938, yet referenced different amounts as owed in connection with this one account. *Id.* at p. 32: 9-22.

4. Part of this confusion was related to the fact Plaintiff did not receive a bill from Methodist regarding the services she received on August 6, 2017. *Id.*

5. Given that the first letter represented that Plaintiff owed $600.00 in connection with Medicredit account ending in 2938, yet the second letter references this same account as totaling $75.00, Plaintiff believed that her insurance may have stepped in to address a part of Plaintiff's purported obligation to Methodist. *Id.* at p. 32: 9-22; p. 33: 4-11.

### III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material issue of fact is a question the trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248 (1986). In determining whether a genuine issue of fact exists, the Court must view all facts in the light most favorable to the non-movant and draw all reasonable inferences in their favor. *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir. 1994). A genuine issue of material fact exists and summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

For purposes of claims brought under the FDCPA, courts have held that since it is a strict liability statute, "debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).  "The Fair Debt Collection Practices Act is an extraordinarily broad statute" and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, . . . we construe its language broadly, so as to effect its purpose."). A false representation can still lead to liability under § 1692e even if the act is unintentional. *Turner v. J.V.D.B. Assocs.*, 330 F. 3d 991, 998 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.*, 233 F. 3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)).

In situations involving determinations as to whether debt collection letters violate the FDCPA, courts have "cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law . . . because 'district judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects.'" *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 759 (7th Cir. 2006) (quoting *Walker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 501-

03 (7th Cir. 1999)); *see also, Carter v. First Nat'l Collection Bureau, Inc.,* 135 F. Supp. 3d 565, 573 (S.D. Tex. 2015) (discussing that district court judges should act with caution when determining how an unsophisticated consumer would read a particular collection letter). "'[W]hat seems pellucid to a judge, a legally sophisticated reader, may be opaque' to the unsophisticated consumer." *Id.*

## IV.    ARGUMENT

Defendant's Motion should be denied in its entirety because: (1) the nature of Defendant's collection letters and the language included therein demonstrate that its collection letters were deceptive for purposes of the FDCPA; and (2) any purported lack of actual damages Plaintiff experienced do not deprive Plaintiff of standing to assert her FDCPA claims.

### A. Defendant's collection letters are in violation of the FDCPA under the least sophisticated consumer and unsophisticated consumer standards governing the FDCPA.

Respondent's Motion is correct in its assertion that the Fifth Circuit applies the least sophisticated consumer or unsophisticated consumer standard when determining whether debt collection letters are in violation of the FDCPA. *Goswami v. American Collections Enterprise, Inc.,* 377 F.3d 488 (5th Cir. 2004).

The "least sophisticated consumer standard serves the . . . purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices . . . ." *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1236 (5th Cir. 1997). This standard views FDCPA violations from the perspective of someone on "the very last rung on the sophistication ladder." *Gammon v.GC Servs. Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir. 1994).

The "unsophisticated consumer standard" is substantially similar, "except that it is designed to protect consumers of below average sophistication or intelligence . . . ." without tying that standard to the bottom rung of the sophistication ladder. *Id.* An unsophisticated consumer may lose bills and may have forgotten about certain debts. *Field v. Wilber Law Firm P.C.,* 383 F.3d 562, 566 (7th Cir. 2004).

With these standards in mind, for purposes of determining whether representations in a collection letter are deceptive under the FDCPA, courts have found that a collection letter is deceptive when there are at least two different reasonable meanings, and one (or both) of them is inaccurate. *See, Velez v. Enhanced Recovery Company, LLC,* 2016 U.S. Dist. LEXIS 57832, at *3 (E.D. Pa. May 2, 2016)

Turning to the nature of Defendant's collection letters, a simple reading of the collection letters illustrates the deceptive way in which such letters represent Plaintiff's obligation in connection with the Medicredit account number ending in 2938. Defendant's entire argument overlooks critical aspects of the collection letters it sent to Plaintiff which illustrate their deceptive nature.

Admittedly, both of the collection letters sent to Plaintiff included "Client Account #'s" and dates of service that were different. *See* Defendant's Motion at Exhibits D-E. However, Defendant is incorrect to assert that these indications go about clearing up the confusing nature of its collection letters. Instead, when taken as a *whole,* the series of collection letters deceptively represent Plaintiff's liability in association with the Medicredit account number ending in 2938.

Principally, the top portion of each collection letter – which is the most prominent portion of the collection letters – refers to an "Account #" ending in 2938. *Id.* Immediately *below* this account number on *both* collection letters is an indication that the **"# of Accounts on File" totals**

"**1.**" *Id.* (emphasis added). Then, to the right of these indications – again in a portion of the collection letters that is distinct and more noticeable than the rest – the two collection letters represent a different "Balance due on file" associated with the account number ending in 2938. *Id.*

Each collection letter reiterates this confusing information in the bottom right portion. In this portion of the September Notice, the account ending in 2938 is represented as having a balance due of $600.00. *See* Defendant's Motion at Exhibit D. In the January Notice, this same account is represented as having a balance due of $75.00. *See* Defendant's Motion at Exhibit E.

The above structure of the collection letters – which is completely overlooked in Defendant's Motion – illustrates the confusing and deceptive nature of its letters. While an unsophisticated or least sophisticated consumer *could* read the collection letters to mean that there are two different underlying accounts associated with Medicredit account ending in 2938 (as suggested by Defendant), it would be equally reasonable – given the nature of the other more prominent representations in Defendant's collection letters – to reach a different conclusion. Specifically, the prominent representation that the letters were sent in relation to account number ending in 2938, in combination with the repeated representation that the "# of Account on File" totals "1," suggests that each collection letter was sent in relation to a single account ending in 2938, that there was only one account included within this account, and that the balance of such account had changed from the September Notice to the January Notice. The bottom portions of Defendant's collection letters reinforce such a reading of the letters. As such, even if a consumer were to notice that there were different dates of service and different "Client Account #'s" across the two collection letters (which, under either the least sophisticated consumer or unsophisticated consumer standard, cannot be readily assumed as such consumers can lose bills and forget about certain debts), the nature of the contrary representations in the collection letters overshadow or

7

otherwise create confusion about the true nature of Plaintiff's account(s) which were placed with Defendant for collection.

Further underscoring the deceptive nature of Defendant's collection letters is Plaintiff's deposition testimony. Although the least sophisticated and unsophisticated consumer standards are objective and thus do not consider Plaintiff's subjective level of confusion, Plaintiff's testimony nevertheless is indicative of the reasonable interpretations that can be derived from a reading of Defendant's collection letters. Plaintiff testified that, when she received the two collection letters, she did not know that the two letters were being sent in relation to different debts. Defendant's Motion at Exhibit A, p. 32: 12-22. Plaintiff stated "I see the account number here, and that's the same as the account number on the other one, so I'm thinking it's the same debt, and that is how I got confused." *Id.* at p. 32: 14-17. Plaintiff believed, given the nature of the collection letters, that her insurance may have stepped in to cover a portion of her debt, which explained the differing amounts. *Id.* at p. 32-34. Plaintiff reiterated how Defendant's collection letters confused her at length throughout her deposition. *Id.* at p. 32-42.

In sum, there is nothing bizarre or idiosyncratic about Plaintiff's interpretation of the collection letters she received. The collection letters are replete with confusing and contradictory representations giving rise to multiple reasonable interpretations of the collection letters. As the Fifth Circuit has stated: "There are some letters that, as a matter of law, are not deceptive based on the language and placement of a disclaimer. At the other end of the spectrum, there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law . . . In the middle, there are letters that include contradictory messages and therefore present closer calls." *Gonzalez v. Kay,* 577 F.3d 600, 606 (5th Cir. 2009). This instant matter presents one such closer call.

However, given the facts outlined above which underscore the deceptive nature of Defendant's collection letter (drawing all reasonable inferences therefrom in a light most favorable to Plaintiff), in combination with the fact-intensive nature of the analysis, it cannot be said that the evidence in this matter undisputedly demonstrates that Defendant's collection letters do not violate the FDCPA as a matter of law. Instead, the evidence on the record demonstrates that a jury would be the proper entity to determine whether Defendant's collection letters violate the FDCPA. Therefore, the Court should find that there exist genuine issues of material fact with respect to whether Defendant's collection letters are deceptive under the FDCPA, and deny its Motion accordingly.

### B. Plaintiff has Article III Standing to assert her claims for Defendant's violations of the FDCPA

The remainder of Defendant's Motion goes on to improperly assert that Plaintiff's purported lack of actual damages in turn precludes Plaintiff from having standing to assert her claims. Defendant's position is patently incorrect and misconstrues the proper standing analysis. Furthermore, Defendant is incorrect to assert that the violations of the FDCPA alleged by Plaintiff do not present a real risk of harm.

As a general matter, it is is established that an individual need not make a claim for actual damages to have standing to sue under the FDCPA. *Matmanivong v. Nat'l Creditor Connection, Inc.,* 79 F. Supp. 3d 864, 871 (N.D. Ill. 2015) ("Thus, notwithstanding a plaintiff's lack of a claim for actual damages, he still has standing to sue under the FDCPA") (internal quotations omitted) (citing *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 307 (2d Cir. 2003); *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 777 (9th Cir. 1982)). Furthermore, it would be error for the Court to synonymize "actual damages" with the "injury in fact" requirement for standing.

The Fifth Circuit, in interpreting the Supreme Court's decision in *Spokeo,* has stated that "a concrete injury must be *de facto;* that is, it must actually exist." *Sayles v. Advanced Recovery Sys., Inc.,* 865 F.3d 246, 250 (5th Cir. 2017) (internal quotations and citations omitted). "However, it also stated that concrete is not . . . necessarily synonymous with tangible." *Id.* (internal quotations and citations omitted). Instead, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* (internal quotations omitted). An example of such circumstances includes situations where "a statutory violation creates the 'risk of real harm'." *Id.* (citing *Bowse v. Portfolio Recovery Assocs., LLC,* 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016)).

As courts within the Fifth Circuit have noted, "[i]n the post-*Spokeo* world, courts have consistently found that [claims similar to Plaintiff's claims] under the FDCPA have Article III standing." *McLain v. Head Mercantile Co.,* 2017 U.S. Dist. LEXIS 137499 at *42 (M.D. La. Aug. 28, 2017); *see also, Reed v. Receivable Recovery Servs., LLC,* 2017 U.S. Dist. LEXIS 59562 at *13 (E.D. La. Apr. 19, 2017); *Masson v. Pioneer Credit Recovery, Inc.,* 2017 U.S. Dist. LEXIS 29505 at *3 (E.D. La. Mar. 2, 2017). Such conclusions reached by courts within the Fifth Circuit are largely in accord with the FDCPA standing analysis of courts across the country. *See, Thomas v. John A Youderian Jr., LLC,* 232 F. Supp. 3d 656, 671 (D.N.J. 2017) ("Deprivation of the right to be free from false or deceptive debt collection information, with the attendant risk of economic injury, is an interest recognized by the [FDCPA], and one reasonably rooted in the traditions of the common law. Under *Spokeo,* it may give rise to Article III standing"); *Hayes v. Convergent Healthcare Recoveries, Inc.,* 2016 U.S. Dist. LEXIS 139743 at *4 (C.D. Ill. Oct. 7, 2016) ("a violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirements of concreteness");

*Quinn v. Specialized Loan Servicing, LL,* 2016 U.S. Dist. LEXIS 107299 at *4 (N.D. Ill. Aug. 11, 2016); *Weast v. Rockport Fin., LLC,* 115 F. Supp. 3d 1018, 1021 (E.D. Mo. 2015).

In *McLain,* the court engaged in a standing analysis in connection with the plaintiff's allegations that a particular debt collection letter was deceptive under the FDCPA. The particular deception in *McLain* involved deception as to the sender of the collection letter, as well as deception as to the amount the Defendant could collect on the subject debt. *McLain,* 2017 U.S. Dist. LEXIS 137499 at *45. The court concluded that such alleged violations of the FDCPA were sufficient to confer standing. *Id.* In reaching this conclusion, the court stated "it is clear that the harm alleged is the exact type of harm Congress intended to prevent. Accordingly, Plaintiff has standing to bring her claims . . . ." *Id.* The misleading nature of the collection letter in *McLain* is substantially similar to the misleading nature of the instant collection letters. As such, the instant collection letters implicate the same type of harm as the letters sent in *McLain,* harm which was sufficient to confer standing. Given the similarities between *McLain* and the instant matter, the Court should find that the nature of Defendant's alleged violations of the FDCPA are sufficient to confer standing.

Furthermore, contrary to Defendant's assertions, debt collection letters that confusingly and misleadingly represent the total amount owed on a particular debt and the nature of the underlying accounts comprising any debts inherently creates a risk of real harm for Plaintiff. For example, in viewing Defendant's collection letters, Plaintiff could be misled into believing she only owed $75.00 in connection with the account number ending in 2983. This confusion – created entirely by the deceptive and unclear nature of Defendant's collection letters – poses the risk to Plaintiff that she make payment to Defendant thinking she has satisfied her obligations on any debts. Such an erroneous assumption would be harmful to Plaintiff as she would otherwise not

address any additional purported obligations said to be owed to Defendant – all to her detriment. As such, Defendant is simply wrong to assert that the only risk of harm stemming from Defendant's conduct is that she would have lost the right to dispute the validity of the debt outlined in the January Notice. Instead, Defendant's conduct created a risk of real harm in Plaintiff commensurate with not being provided clear and accurate information regarding the extent and nature of Plaintiff's liability on the debt(s) upon which Defendant was attempting to collect.

Therefore, the Court should deny Defendant's Motion to the extent it seeks dismissal of Plaintiff's claims pursuant to 12(b)(1). As demonstrated above, Plaintiff has the requisite standing to assert her claims for Defendant's violations of the FDCPA.

**V.     CONCLUSION**

Defendant's Motion should be denied in its entirety because the record demonstrates that there are genuine issues of material fact as to whether Defendant's collection letters constituted deceptive and misleading representations in violation of the FDCPA. The nature of the collection letters themselves, in combination with the fact-intensive inquiry necessary to determine whether a collection letter is deceptive or misleading under the FDCPA, underscores that the issues presented by Defendant's Motion are most properly decided by a jury. Furthermore, the Court should find that Plaintiff has standing to assert her claims under the FDCPA, and deny Defendant's Motion to the extent it seeks dismissal of Plaintiff's claims under 12(b)(1).

WHEREFORE, Plaintiff, MARY REYNOLDS, respectfully requests this Honorable Court enter an order denying Defendant's Motion in its entirety and for any other relief just and appropriate.

Dated: January 4, 2019                                          Respectfully submitted,

*s/ Nathan C. Volheim*
Nathan C. Volheim

Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
nvolheim@sulaimanlaw.com


**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Plaintiff, certifies that on January 4, 2019, he caused a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMET OR IN THE ALTERNATIVE MOTION TO DISMISS FOR LACK OF STANDING** to be served electronically via the Court's CM/ECF system on all counsel of record.


*s/ Nathan C. Volheim*
Nathan C. Volheim