UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARY R. REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:18-CV-00099-XR |
| ) | |
| MEDICREDIT, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT MEDICREDIT, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF STANDING**

Defendant Medicredit, Inc. ("Medicredit"), through counsel, files the following Reply in Support of its Motion for Summary Judgment or, in the Alternative, Motion to Dismiss for Lack of Standing (the "Motion"):

**I.     Preliminary Statement**

Plaintiff has conceded there are no genuine issues of material fact.  Indeed, Plaintiff admits all of the undisputed facts Medicredit set forth and none of the additional facts Plaintiff puts forth contradict any of Medicredit's.  As such, despite Plaintiff's arguments, the issues before this Court are purely legal because no reasonable jury could find for Plaintiff.

Plaintiff's pleas that she was actually confused by Medicredit's two Notices are also immaterial because the "least sophisticated consumer" or "unsophisticated consumer" standards are objective ones.  In other words, whether Plaintiff was actually confused is immaterial to this Court's determination and cannot create a genuine dispute of <u>material</u> fact. Even if Plaintiff's subjective state of mind were relevant, her claims that she was confused are "blatantly contradicted by the record" such that no "reasonable jury" could believe her and this Court need

not adopt her purported facts. The incontrovertible evidence in the record shows that Plaintiff did not actually receive the January Notice[1] until discovery in this lawsuit and after she was already represented by counsel. So Plaintiff could not have been confused by the January Notice.

Finally, Medicredit's Notices did not pose any "risk of real harm" to Plaintiff. In fact, because Plaintiff did not receive the January Notice until discovery in this case and after she had counsel, there was no "risk of real harm" to Plaintiff and she thus lacks Article III standing.

## II.    Response to Plaintiff's Statement of Additional Undisputed Material Facts

1.     Although Plaintiff received a bill from the original creditor – Methodist Specialty and Transplant Hospital ("Methodist") – in relation to the March 26, 2017 services she received from Methodist, Plaintiff did not receive a bill from Methodist regarding the services she received on August 6, 2017. *See* Defendant's Motion at Exhibit A, p. 32: 2-5.

**RESPONSE:** Admit.

2.     Plaintiff further testified about the confusing nature of Defendant's collection letters during her deposition. *See id.* at p. 31-41.

**RESPONSE:**   Objection:  Plaintiff's subjective confusion is immaterial because the "least sophisticated consumer" or "unsophisticated consumers" standards are objective, and not subjective, standards. Subject to, and without waiving, that objection: Deny. Plaintiff could not have actually been confused because she did not receive the January Notice until after this case was filed and Medicredit sent it to her counsel in discovery; the address on the January Notice was "Mary Reynolds, 27357 Parison Manner, Comfort, TX 78013-". *See* Doc. 28-5; *see also* account notes, attached hereto as **Exhibit H**, at p. 1 (2/13/2018 7:05 AM); Medicredit's

---

[1] This Reply uses the same defined terms as used in Medicredit's Motion.

Responses and Objections to Plaintiff's First Request for Production of Documents, attached as **Exhibit I**, at p. 4 (#5); *and* Second Declaration of Don Wright, attached as **Exhibit J** at ¶¶ 3–4. However, Plaintiff testified that her correct address is 27357 Paraiso Manor, Boerne, TX 78015 and that she has lived at that address since approximately 2015. *See* Doc. 28-1, at p. 6:2–7.

    3.    Plaintiff's confusion stemmed from the fact that both of the collection letters sent to Plaintiff were associated with a single Medicredit account number ending in 2938, yet referenced different amounts as owed in connection with this one account. *Id*. at p. 32:9–22.

    **RESPONSE:** *See* Objection and Response to paragraph 2 above.

    4.    Part of this confusion was related to the fact Plaintiff did not receive a bill from Methodist regarding the services she received on August 6, 2017. *Id*.

    **RESPONSE:** *See* Objection and Response to paragraph 2 above.

    5.    Given that the first letter represented that Plaintiff owed $600.00 in connection with Medicredit account ending in 2938, yet the second letter references this same account as totaling $75.00, Plaintiff believed that her insurance may have stepped in to address a part of Plaintiff's purported obligation to Methodist. *Id*. at p. 32: 9-22; p. 33: 4-11.

    **RESPONSE:** *See* Objection and Response to paragraph 2 above.

    **III.    Argument**

    Plaintiff's arguments are unconvincing. When read as a whole and "with some care", reasonable minds could not differ that the January Notice is not misleading, deceptive, or confusing. Further, Plaintiff's argument that she was subjectively confused is immaterial. Even if those arguments were material, they are blatantly contradicted by the record. Finally, there was no "risk of real harm" to Plaintiff and she therefore lacks Article III standing.

> **A. The Notices do not violate the FDCPA because, when read as a whole and with some care, no reasonable jury could find them misleading and Plaintiff's alleged subjective confusion is immaterial.**
>
> > **i. No reasonable minds could differ that, when read as a whole, the Notices are not misleading or confusing.**

Plaintiff first erroneously argues that the issue of whether the Notices violated the FDCPA is an issue of fact that should be left to the jury. Plaintiff ignores, however, that whether a written communication violates the FDCPA is not always an issue of fact; where, as here, reasonable minds cannot differ, a court appropriately disposes of this issue on summary judgment. *Gomez v. Niemann & Heyer, LLP*, 2016 WL 3562148, at *4 (W.D.Tex. Jun 24, 2016). Here, there is no reasonable disagreement that, when read as a whole, the January Notice is not deceptive as a matter of law as it plainly indicates the exact debt it concerns, Medicredit's use of its own internal account number notwithstanding.

Contrary to Plaintiff's argument, the two Notices are not subject to two competing interpretations. Plaintiff myopically focuses on the fact that the Notices both list the same internal Medicredit account number and state that there is one account on file. Plaintiff's argument does not, as case law in this Circuit requires, read the Notices "as a whole" and "with some care." *See Gomez*, 2016 WL 3562148, at *3 (quoting *Osborn v. Ekpz, LLC*, 821 F.Supp.2d 859, 867 (S.D.Tex. 2001)); *and Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009). Specifically, Plaintiff's argument is essentially that if a hypothetical consumer read only the internal account number Medicredit used, the amount due, and the number of accounts on file, to the exclusion of the rest of the information in the Notices, then they are misleading and confusing under the FDCPA.

But, under binding precedent in this Circuit, a finder of fact or hypothetical consumer cannot proof-text a written communication from a debt collector like Plaintiff has. Again, the

hypothetical consumer is presumed to read the entire communication "with some care." *Id*. When doing so here, no reasonable minds could differ regarding the interpretation of the Notices. The Notices, as Plaintiff conceded in her deposition, plainly state differing "client account #s", dates of service, and amounts due in the middle of the first page in a large table that readily attracts the reader's attention and to which other portions of the Notices direct the reader's attention. *See* Doc. 28-4 & 28-5; *and* Doc. 28-1 at pp. 26:8–31:23. In other words, the Notices can only be confusing if the reader ignores a large portion of them—the portion that conveys the actually pertinent information—and reads only the portions he or she chooses out of context. So when read as a whole it becomes apparent that the two Notices concerned different obligations. *See Philips v. Central Fin. Ctrl.*, 2018 WL 3743221, at *5 (N.D.Ala. Aug. 7, 2018) (stating, among other things, that "...Defendant's letter directs Plaintiff to look to the top of the letter for" further information and finding no violation of 15 U.S.C. § 1692g).

        **ii.**      **Whether Plaintiff claims she was actually confused is immaterial.**

In her Response, Plaintiff readily concedes that "the least sophisticated and unsophisticated consumer standards are objective and thus do not consider Plaintiff's subjective level of confusion." *See* Doc. 30, at p. 8. Despite this concession, Plaintiff argues, without citation to any authority, that "Plaintiff's testimony nevertheless is indicative of the reasonable interpretations that can be derived from a reading of Defendant's collection letters." *Id*. Indeed, case law in this Circuit is clear that an FDCPA plaintiff's subjective belief about a collection letter is immaterial. *See, e.g., Boles v. Moss Codilis, LLP*, 2012 WL 12861080, at *9 (W.D.Tex. Jan. 17, 2012) (stating, in the context of the commonality analysis for class certification of an FDCPA case, "The main substantive issue of the case will be whether the letter was **objectively** misleading under the FDCPA...Since the test is objective, the same analysis will apply to every

member of the class. **<u>No subjective inquiries will be required.</u>**") (emphasis added); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (stating that the "least sophisticated consumer" or "unsophisticated consumer" standards are objective). So Plaintiff's self-serving testimony that the Notices subjectively confused her simply is not material to this Court's determination of the issue before it.

Even if it Plaintiff's confusion could be material, it is far from dispositive. Plaintiff's confusion stems for her claim that she did not receive a bill from Methodist for her August 2017 visit. *See* PSAUMF and ¶ 5. Plaintiff, however, has admitted that she was seen at Methodist at that time and that she had a financial obligation to Methodist for that visit. Because Plaintiff was aware she had a financial obligation to Methodist for the August 2017 visit, she cannot claim the January Notice was confusing because she did not receive a bill from Methodist. *See Philips*, 2018 WL 3743221, at *5 ("Furthermore, 'the least sophisticated consumer does not start each day anew with no memory of the last; instead, he has a reasonable knowledge of his account's history.'").

        iii.    **Even if Plaintiff's alleged subjective confusion were material, Plaintiff could not have been confused because she did not, in fact, receive the January Notice until discovery in this case and after she already had counsel.**

Plaintiff's complaints that the January Notice actually confused her, even if they were material to the issue before this Court, are "blatantly contradicted by the record, so that no reasonable jury could believe" them. *Garcia v. City of Buda*, 2018 WL 6682419, at *2 (W.D.Tex. Dec. 19, 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). In such a situation, a court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. In other words, discounting a party's version of events when they

SL 3115927.1

are "blatantly contradicted by the record" is not an impermissible credibility determination and a court may appropriately enter summary judgment.

Here, Plaintiff's self-serving testimony that she was confused by the January Notice is "blatantly contradicted by" the record evidence. The January Notice plainly indicates that it was mailed to "27357 Parison Manner, Comfort, TX 78013-", rather than Plaintiff's admittedly proper adders of 27357 Paraiso Manor, Boerne, TX 78015.[2]  *See* Response to Plaintiff's Statement of Additional Undisputed Material Facts ("Response to PSAUMF") at ¶¶ 2–5. Further, the mailing of the January Notice was returned. *See* Response to PSAUMF at ¶¶ 2–5. So Plaintiff only obtained a copy of the January Notice when Medicredit produced it in discovery on May 21, 2018—approximately five months after Plaintiff filed suit and was represented by an attorney. *See* Response to PSAUMF at ¶¶ 2–5. This Court, therefore, should not adopt any of Plaintiff's "facts" about her subjective confusion because they are "blatantly contradicted" by all other evidence in the record and grant Medicredit's Motion.

> **B. Plaintiff has conceded that she lacks actual damages, so this Court should hold that she lacks Article III standing, or, if this case is allowed to proceed, that she cannot seek actual damages at trial.**
>
> **i.    If this Court permits this case to proceed to trial, it should prohibit Plaintiff from seeking actual damages.**

Plaintiff has also conceded that she lacks any actual damages in this case. That is, Plaintiff does not argue that she has suffered any actual damages as a result of the Notices; instead, she argues only that she still has Article III standing despite her lack of actual damages. *See* Doc. 30, at 9–12. Thus, because Plaintiff has failed to argue that she has actual damages in this case, in the event this Court allows this case to proceed to trial, it should, at a minimum, hold

---

[2] Further, a comparison of the mailing addresses on the September Notice to the January Notice shows that the September Notice was sent to the proper address—27357 Paraiso Manor, Boerne, TX 78015.  *See* Doc. 28-4 at p. 1.

7

that Plaintiff cannot seek to recover actual damages at trial. *See Avneri v. Hartford Fire Ins. Co.*, 2017 WL 4663867, at *2 (E.D.Tex. Oct. 17, 2017) ("...Plaintiff abandoned his negligence claim when he failed to respond to Defendant's argument that such a claim did not exist.").

> ii. **Plaintiff's admission that she lacks actual damages means that she lacks Article III standing and that this Court lacks subject matter jurisdiction.**

Despite Plaintiff's arguments, she lacks Article III standing because she has conceded she does not have any actual damages as a result of the Notices. Plaintiff first incorrectly argues that as "a general matter, it is is [sic] established that an individual need not make a claim for actual damages to have standing to sue under the FDCPA." *See* Doc. 30 at p. 9. Plaintiff cites several cases from courts outside this Circuit to attempt to argue this proposition. Not only are those cases from outside the Fifth Circuit, and thus not binding on this Court, but all cases Plaintiff cites were decided in 2015 or earlier and predate the U.S. Supreme Court's May 2016 decision in *Spokeo, Inc. v. Robins*. ---- U.S. ----, 136 S. Ct. 1540 (2016). So Plaintiff is simply incorrect; while a plaintiff may not need actual damages to have standing, a mere statutory violation must present the "risk of real harm" for a plaintiff to have standing. *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017).

Plaintiff's arguments about an FDCPA plaintiff's standing post-*Spokeo* are also misplaced. Plaintiff relies principally on *McLain v. Head Mercantile Co.* from the Western District of Louisiana. 2017 WL 3710073 (W.D.La. Aug. 28, 2017). Plaintiff states in conclusory fashion that the plaintiff in *McLain* alleged that a debt collector's written communications were deceptive as they "involved deception as to the sender of the collection letter, as well as deception as to the amount the Defendant could collect on the subject debt." *See* Doc. 30 at p. 11. While one issue in *McLain* was the identity of the debt collector, the other

SL 3115927.1

dispute was not, strictly speaking, about the "amount the Defendant could collect on the subject debt." Rather, the debt collector in *McLain* provided the debtor with several payment options, including payment by checks by phone, which would involve a $2.00 convenience fee. *Id*. at *2. It was these deceptions together that could have led to plaintiff paying $2.00 more than she potentially was required to that the *McLain* court found to confer Article III standing. *See id*. at *15.

Here, unlike *McLain*, the alleged deception Plaintiff claims would not have caused her to pay more than what she owed to Methodist. Indeed, Plaintiff has not argued or even alleged that Medicredit improperly sought to collect more than it was legally entitled to. Instead, Plaintiff simply argues that the Notices could have caused her to pay less than was actually owing. But that confusion, quite contrary to Plaintiff's argument in her Response, stems not from the January Notice itself, but from the fact she apparently never received (or does not recall receiving) a bill directly from Methodist concerning her August 2017 visit. *See* PSAUMF at ¶ 5. Therefore, by Plaintiff's own testimony, it was not the January Notice that confused Plaintiff about the amount of her debts to Methodist, but Methodist's apparent failure to properly mail a bill to Plaintiff. In other words, the January Notice itself did not present a "risk of real harm" to Plaintiff.

This case is also similar to *Abercrombie v. Rogers, Carter, & Payne, LLC*, 2016 WL 8201965 (W.D.La. Nov. 22, 2016). In *Abercrombie*, the plaintiff alleged that a debt collector's initial notice mislead him concerning his rights to seek validation of the debt and to dispute it. *Id*. at *1–*2. The *Abercrombie* court, in an extensive analysis of Article III standing post-*Spokeo*, concluded that there was no "risk of real harm" because the plaintiff did not contest the validity of the underlying debt or allege that he would have. *Id*. at *3–*6.

9

Here, like in *Abercrombie*, plaintiff appears to be claiming that the allegedly misleading nature of the January Notice could have caused her to forfeit her rights to seek validation or to pay less than necessary to fully satisfy her obligations. But, like the *Abercrombie* plaintiff, Plaintiff presents only hypothetical risks; she has not presented any facts or even alleged that she intended to seek validation of the debts she owed to Methodist or that she imminently intended to pay them.

Indeed, there was no "risk of real harm" to Plaintiff here. Again, Plaintiff never actually received the January Notice until Medicredit produced it in discovery in this lawsuit and when she already had counsel. *See* Response to PSAUMF at ¶¶ 2–5. Plaintiff also has not alleged or presented any facts showing that she ever actually received the January Notice prior to discovery in this lawsuit. Simply put, in this scenario, there can be no risk of harm to Plaintiff. Thus, Plaintiff lacks Article III standing and this Court should dismiss this lawsuit for lack of subject matter jurisdiction.

## IV.     Conclusion

Plaintiff's arguments in response to Medicredit's Motion are unconvincing. First, the January Notice could be deemed misleading, deceptive, or confusing only if the reader were to proof-text it and focus only on very limited portions of it. But when read as a whole, no reasonable minds could differ that it is not misleading, deceptive, or confusing. Second, Plaintiff's self-serving statements that she was subjectively confused are immaterial. Even if Plaintiff's subjective state of mind were material, they are "blatantly contradicted by the" record evidence. Plaintiff did not receive the January Notice until discovery had commenced in this case. Finally, despite Plaintiff's arguments, she lacks Article III standing. The January Notice did not present any "risk of real harm" to Plaintiff. In fact, Plaintiff has not alleged or presented

any evidence that she ever intended to pay the debts she owed or to seek validation of them. There can also be no "risk of real harm" because Plaintiff only received the January Notice through discovery in this case. For all of these reasons, this Court should grant Medicredit's Motion.

WHEREFORE Defendant Medicredit, Inc., requests this Court grant its Motion for Summary Judgment or, in the Alternative Motion to Dismiss for Lack of Standing, enter an Order entering judgment in its favor on Plaintiff's Amended Complaint or alternatively dismissing Plaintiff's Amended Complaint for lack of standing, and for any additional relief this Court deems appropriate under the circumstances.

Respectfully submit this 11th day of January, 2019.

Respectfully submitted,

By: *s/ Jacob F. Hollars*
Jacob F. Hollars (admitted *pro hac vice*)
   Colorado Bar No. 50352
jhollars@spencerfane.com
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Tel: 303.839-3707
Fax: 303.839.3838

Mark A. McNitzky
   Texas Bar No. 24065730
Mark.mcnitzky@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
112 E. Pecan St., Suite 2700
San Antonio, Texas 78205
Tel: 210-354-1300
Fax: 210-277-2702

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading was filed and served via the Court's CM/ECF system and served by email on all counsel of record, this 11th day of January, 2019.

<u>*s/ Jacob F. Hollars*</u>
Jacob F. Hollars

SL 3115927.1