UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARY R. REYNOLDS, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 5:18-CV-99-XR |
| MEDICREDIT, INC., | § § § | |
| *Defendant*, | § § | |

## ORDER

On this date, the Court considered Defendant's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss for Lack of Standing (docket no. 28), Plaintiff's response (docket no. 30), and Defendant's reply (docket no. 31). After careful consideration, the Court GRANTS Defendant's motion.

## BACKGROUND

This case stems from Defendant Medicredit's attempt to collect two debts owed by Plaintiff Mary Reynolds for healthcare services rendered in 2017 by Methodist Specialty & Transport Hospital ("Methodist"). Methodist turned over collection of these debts to Defendant. Defendant's subsequent collection efforts led to Plaintiff's filing of this suit on January 31, 2018. Docket no. 1.

Plaintiff's causes of action and theories of recovery have changed since the suit's outset. In her original complaint, Plaintiff brought claims under the Fair Debt Collection Practices Act ("FDCPA"), the Telephone Consumer Protection Act, and the Texas Debt Collection Act. *Id.* Allegedly excessive and harassing phone calls were the underlying conduct for these claims. On

1

June 11, 2018, the Court granted Plaintiff's unopposed motion for leave to amend her complaint. Docket no. 19. This Amended Complaint drops mention of Defendant's allegedly illegal phone calls and directs attention to Defendant's allegedly illegal debt collection letters. As it stands, Plaintiff's sole causes of action are for FDCPA violations.

Plaintiff incurred the first debt of $600 on March 26, 2017 ("Debt One") and the second debt of $75 on August 6, 2017 ("Debt Two"). Docket no. 19 at 2. Defendant sent a collection letter seeking payment of Debt One on September 12, 2017, and sent another letter seeking payment of Debt Two on January 26, 2018. *Id.* at 3. It is on these letters that Plaintiff bases her claims.

The letters closely mirror one another and include the following information. *See* docket nos. 28-4 and 28-5. Under the Medicredit, Inc. letterhead, both letters give the same "Account #," which ends in "2938." Immediately below this, both letters state: "# of Accounts on File: 1." Also at the top of the page, the first letter states that the balance due is $600 and the second states that the balance is $75.

Below this, the letters include several lines of text. Both state: "The account(s) listed below have been placed with this agency with the full intention of collection on this account(s). Please give the past due account(s) the attention it deserves." Both then include a dunning notice. This notice states:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Below this notice, the letters include five-column tables that differ. Both list "Patient Name" as "Mary Reynolds" and "Facility" as "Methodist Specialty & Tran" [*sic*]. The first letter, however, lists a "Client Account #" that ends in "4070" and lists "Date of Service" as "03/26/2017" and "Balance" as "$600.00." This information matches that given in Methodist's original bill for Debt One, sent May 3, 2017. Docket no. 24-2. The "4070" account number is the account number assigned by Methodist.

The second letter lists a "Client Account #" that ends in "3445" and lists "Date of Service" as "08/06/2017" and "Balance" as "$75.00." Defendant argues that the "3445" account number is the account number assigned by Methodist. Docket no. 24-3. The parties do not dispute, however, that Plaintiff did not receive a bill from Methodist for the services that led to Debt Two.

She alleges that "Defendant misleadingly assigned two completely different obligations with the same self-generated account number" and that this "conduct had the natural consequence of confusing Plaintiff as to the true character and amount of the purported obligations." Docket no. 19 at 4. The principal confusion, Plaintiff alleges, is this: "Given that the first letter represented that Plaintiff owed $600.00 in connection with Medicredit account ending in 2938, yet the second letter references this same account as totaling $75.00, Plaintiff believed that her insurance may have stepped in to address a part of Plaintiff's purported obligation to Methodist." Docket no. 30 at 3. Plaintiff alleges that Methodist's failure to send a bill for Debt Two contributed to Plaintiff's confusion. *Id.*

Thus, the crux of Plaintiff's complaint is that Defendant unlawfully confused Plaintiff by including the same internal account number on both letters even though the letters pertain to separate debts. Plaintiff alleges, first, that Medicredit's assigning both debts the same account

3

number violated 15 U.S.C. §1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* This section enumerates specific violations, and Plaintiff points to two: §1692e(2), which prohibits "[t]he false representation of the character, amount, or legal status of any debt" and §1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." *Id.* Plaintiff alleges, second, that this same conduct violated 15 U.S.C. §1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* at 5. As a result, Plaintiff seeks a declaration that these practices are unlawful, statutory damages of $1,000, actual damages, and costs and attorney fees. *Id.*

Defendant now moves for summary judgment on the basis that no reasonable factfinder could find the correspondence at issue misleading. This is because the "least sophisticated consumer" or the "unsophisticated consumer"—the objective standards under the FDCPA—would understand that the letters were for separate financial obligations. In the alternative, Defendant argues Plaintiff lacks standing because she fails to identify actual damages.

## DISCUSSION

I. **Applicable Law**

   a. **Standard of Review**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear

the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

   b. **FDCPA Standards**

The FDCPA's purpose is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Because "Congress clearly intended the FDCPA to have a broad remedial scope," the FDCPA "should therefore be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (internal citations and quotations omitted). To state an FDCPA claim, a plaintiff must show: "(1)

that he was the object of collection activity arising from a consumer debt; (2) that Defendant is a debt collector as defined by the FDCPA; and (3) that Defendant engaged in an act or omission prohibited by the FDCPA," *Douglas v. Select Portfolio Servicing, Inc.*, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015), and an FDCPA claim must be brought within one year of the alleged violation, *Smither v. Ditech Fin., LLC*, 2017 WL 958314, at *6 (5th Cir. Mar. 10, 2017) (citing 15 U.S.C. § 1692k(d)).

Here, no party disputes that Defendant is a debt collector or that Plaintiff was the object of collection activity arising from a consumer debt. The only inquiry relevant to this case is whether Defendant's conduct violated the FDCPA. The FDCPA provisions cited by Plaintiff prohibit debt collectors from

- using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e;
- making a "false representation of the character, amount, or legal status of any debt," *id.* § 1692e(2);
- using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer," *id.* § 1692e(10); or
- using "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f.

### i. The Least Sophisticated or Unsophisticated Consumer

"When deciding whether a debt collection letter violates § 1692e or § 1692f, the Court must view the correspondence from the perspective of an 'unsophisticated or least sophisticated consumer.'"[1] *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 3562148, at

---

[1] "The Fifth Circuit has not yet been forced to choose between distinguishing the unsophisticated consumer from the least sophisticated consumer, as each case it has decided involving the issue would have had the same outcome

6

*3 (W.D. Tex. June 24, 2016) (quoting *Goswami v. Am. Collections Enter., Inc*., 377 F.3d 488, 495 (5th Cir. 2004)).

The unsophisticated consumer is neither "shrewd nor experienced in dealing with creditors" but is not "tied to the very last rung on the [intelligence or] sophistication ladder." *Goswami*, 377 F.3d at 495 (alteration in original). The unsophisticated consumer is "not illiterate and can be expected to read the entire collection letter with some care." *Osborn v. Ekpsz, L.L.C*., 821 F. Supp. 2d 859, 867 (S.D. Tex. 2001) (citing *Greco v. Trauner, Cohen & Thomas, L.L.P*., 412 F.3d 360, 363 (2d Cir. 2005)). Thus, "debt collection letters must be considered as a whole when determining if they violate the FDCPA." *Gomez*, 2016 WL 3562148 (citing *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009) and *Peter v. GC Servs. L.P*., 310 F.3d 344, 349 (5th Cir. 2002)).

Whether a letter is deceptive, misleading, or unfair to an unsophisticated consumer is generally a fact question. *Carter v. First Nat. Collection Bureau, Inc*. 135 F. Supp. 3d 565, 569 (S.D. Tex. 2015) (citing *Gonzalez*, 577 F.3d at 605-06). A court may decide this question as a matter of law "only when 'reasonable minds' cannot differ as to whether a letter would be deceptive, misleading, or unfair to the unsophisticated consumer." *Gomez*, 2016 WL 3562148 (citing *Gonzalez*, 577 F.3d at 606-07). The unsophisticated consumer test is objective, "meaning that it is unimportant whether the individual who actually received an allegedly violative letter was misled or deceived." *Id.* (citing *Taylor*, 103 F.3d at 1236). "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the

---

under either standard." *Gomez*, 2016 WL 3562148; *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (declining to choose between the two standards—as the result would not change—but stating that the least sophisticated and unsophisticated consumer standards "serve the same purposes and apparently would lead to the same results in most cases, except that [the unsophisticated consumer standard] is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder" (internal quotations omitted)); *McMurray v. ProCollect, Inc*., 687 F.3d 665, 669 (5th Cir. 2012) (declining to choose between the two standards but reaffirming the difference between the two standards stated in *Taylor*).

credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor*, 103 F.3d at 1236 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

### ii. False, Deceptive, or Misleading Under Section 1692e

"The Fifth Circuit does not appear to have explicitly given definition to what it means for a debt collection letter to be false, deceptive, or misleading under the FDCPA," but a "review of circuit court decisions nationwide supports the conclusion that 'false,' 'deceptive,' and 'misleading' function substantially identically, especially since the advent of the 'materiality standard.'" *Gomez*, 2016 WL 3562148, at *4. The Second Circuit has stated that a debt collection letter is deceptive "when it can be reasonably read to have two or more different meanings, one of which is inaccurate," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996), and this definition is "widely accepted," *Gomez*, 2016 WL 3562148, at *5 (collecting cases). Some courts have stated that this provision prohibits collection letters that "confuse," which "seems to simply be an extension of the underlying principle" underlying the FDCPA. *Id.* (citing, among others, *Gonzalez*, 660 F.3d at 1062). At bottom, though, the "ultimate question in each [case] is whether the unsophisticated or least sophisticated consumer would have been led by the debt collection letter into believing something untrue that would have influenced their decision-making." *Id.*

## II. Application

Each of Plaintiff's FDCPA claims relies on the same underlying conduct—Defendant's inclusion of the same internal account number on two letters that pertain to different debts. Plaintiff concedes that Defendant's proposed reading of the letters is reasonable. Docket no. 30 at 7. That is, an unsophisticated consumer could read the letters and understand that the differing

client account numbers, dates of service, and balances due indicate that the letters refer to different debts. *Id.* Plaintiff's principal legal theory, though, is that another reading is also reasonable. *Id.* That is, an unsophisticated consumer could read the letters and (incorrectly) assume that Medicredit's internal account number (which is the same on both letters) and the representation that the number of accounts on file is "1" indicate that the letters refer to the same debt but that the balance had changed in the time that elapsed between the notices. *Id.* Plaintiff argues that both readings are reasonable and one is inaccurate, so the letters violate the FDCPA, since a "deceptive" letter "can be reasonably read to have two or more different meanings, one of which is inaccurate."

The Court addresses Plaintiff's § 1692e and § 1692f claims in turn.

1. **Plaintiff's FDCPA § 1692e Claims**

Defendant argues that Plaintiff raises no triable fact issue as to her § 1692e claims because

> when read as a whole, even the "least sophisticated consumer" or the "unsophisticated consumer" would realize the two Notices pertained to separate debts from two separate visits to Methodist and would not be deceived or misled by Medicredit's use of its own account number on both Notices. Indeed, such a consumer would readily be able to determine that the two Notices pertained to separate debts. The Notices specifically direct the reader to the debt listed in the table "below". Further, the "client account number" on each Notice corresponds to the account number listed in the bills Plaintiff received or should have received from Methodist, the original creditor.

The Court agrees that the letters deceive or mislead only under a "bizarre or idiosyncratic" reading. Even the unsophisticated consumer—when reading the letters as a whole, with some care—would note the differing client account numbers, the dates of service that differ by more than four months, and the large gap between the two balances of $600 and $75. That

unsophisticated consumer would see that these differences show that the letters refer to separate debts. No reasonable factfinder could find otherwise.

While both sides note that the unsophisticated consumer test is objective, they debate at length Plaintiff's subjective confusion regarding the amount and status of her debts. But "a plaintiff's mere claim of confusion is not enough to withstand a motion for summary judgment. Rather, a plaintiff must demonstrate that the letter's language unacceptably increases the level of confusion." *Sims v. GC Services L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (citing *Durkin* v. *Equifax Check Services, Inc*., 406 F.3d 410, 414-15) (7th Cir. 2005)). The plaintiff can demonstrate a triable issue of fact if the "collection letter is confusing or unclear on its face" or through "objective evidence of confusion . . . such as surveys that attempt to measure the level of consumer understanding" of the letter. *Id*. Plaintiff does not do so here, and her claims under § 1692e, § 1692(e)(2), and § 1692(e)(10) fail as a matter of law.

2. **Plaintiff's FDCPA § 1692f Claim**

While Plaintiff pointed to specific subsections in raising her § 1692e claims, she did not do so in raising her § 1692f claim. While the Supreme Court has not "had the occasion to construe the terms 'unfair' or 'unconscionable' in § 1692f[,]" it stated that "[t]he FDCPA's legislative history suggests that Congress intended these terms as a backstop that would enable 'courts, where appropriate, to proscribe other improper conduct . . . not specifically addressed' by the statute." *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1418 n.4 (2017) (quoting S. Rep. No. 95–382, at 4 (1977)). Thus, courts in this District, in line with district courts elsewhere, have held that "[i]n light of § 1692f's legislative history . . . [a] claim under § 1692f must be based on either conduct within the listed provisions of § 1692f or based on conduct that does not

violate another section of the FDCPA." *Nolan v. Account Control Tech., Inc.*, No. A-17-CV-1184-SS, 2018 WL 1903147, at *5 (W.D. Tex. Feb. 23, 2018) (collecting cases).

If Plaintiff's § 1692e claims had survived summary judgment, then, her § 1692f claim would fail because it would be based on conduct that violates another FDCPA provision. *See id.* ("Because [Defendant's] alleged misrepresentation in the Letter is prohibited by § 1692e and Plaintiff has alleged no other misconduct, the Court finds Plaintiff has failed to adequately plead a claim under § 1692f"). Since Plaintiff's § 1692e claims failed, her § 1692f claim could still survive. All of Plaintiff's FDCPA claims share the same flaw, however. For the reasons stated above, Defendant's inclusion of a self-generated account number, even viewed from an unsophisticated consumer's perspective, is not unfair or unconscionable, just as it was not false, deceptive, or misleading. Thus, the Court grants summary judgment as to Plaintiff's § 1692f claim.

### 3. Standing

Because the Court grants summary judgment as to all of Plaintiff's claims, it need not take up Defendant's argument that Plaintiff lacks standing because she suffered no actual damages.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (docket no. 28) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, and it is ORDERED and ADJUDGED that Plaintiff shall take nothing by her claims and her claims are DISMISSED WITH PREJUDICE. The Clerk is directed to CLOSE this case.

It is so ORDERED.

SIGNED this 18th day of January, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE